Good morning, Your Honors. May it please the Court. My name is Molly Lee. I represent Appellant, the Sequoias, San Francisco. Your Honors, the Sequoias respectfully request that this Court reverse the District Court's decision and vacate Arbitrator Bogue's Arbitration Award because it does not draw its essence from the agreement. The Sequoias understands that this is a very high standard to meet and that arbitration awards are entitled to great deference. Nonetheless, when an award contradicts the plain language of an agreement, it is not a plausible interpretation of the agreement and thus should be vacated. What plain language of the agreement does the Arbitration Award contradict? Well, there are several positions. First… Why don't you lead with Trump? You're best. Okay. Well, Article 23F and Article 26 both require extensions of time limits. 23F requires extensions of time limits to be in writing, and 26 requires waivers of a provision of the collective bargaining agreement to be in writing. There was no consideration of Article 26, and she found waiver by conduct. That is directly contradictory towards these two provisions. She did this because she thought the results would otherwise be harsh. That is a paradigm example of an arbitrator imposing her sense of industrial justice on the decision rather than applying the clear terms of the contract. That phrase sounds like it's been used before. Which phrase? The phrase you just used, industrial justice. That's right. That's from the case law. That's one of the standards for vacating an arbitration award. The courts find that an award does not draw its essence from the agreement when an arbitrator, instead of applying the terms of the agreements, applies the arbitrator's own sense of justice. And that's exactly the case here. She felt that the employer was at fault for a delay and that the union shouldn't be penalized for failing to make the request for arbitration within the time limits. She thought that was unfair, and so she didn't apply the writing requirement. Okay. The writing requirement being? Right. 23F requires any extension of the 60-day time limit to be in writing, yet she extended it without a writing. There's no dispute that there is no writing here. She found it through conduct on the same. But didn't you agree to it? Agree to the time extension? No, absolutely not. Did you disagree with it? Sorry? Did you disagree with it? Did we disagree with the time limit? The extension. Yes. Were all of these extensions, were you insisting all the time that if we don't, if we delay this, then we're not going to meet the 60 days? There was no extension. What happened was the time limit came and went without the union requesting arbitration. The parties continued to discuss the grievance. They were discussing the grievance, right? Right. And the Sequoias is required to discuss the grievance under the National Labor Relations Act. It has a duty to bargain and to provide information. These were information requests that the union was asking for. Its bargaining obligation under Section 885 of the National Labor Relations Act requires it to engage in these conversations even when a grievance is untimely, because there are other issues related to the grievance that can be discussed through the meet-and-confer process. Ms. Lee, it's not your position that the union cannot file an unfair labor practice charge on failure to bargain, right? No, because they lived up to their bargaining obligation by engaging in these conversations. All you're saying is that they didn't extend the time to arbitrate, so they have to go directly from the grievance procedure to any ULP that they want to file, right? Correct. I'm not saying they have a right to file a ULP in this case. I'm just saying that was the reason why the Sequoias engaged in the conversations that it did. Should we really say that? Sorry? Do we really want to say that? Do we really want to hold that the parties are discussing the grievance and are proceeding to possibly negotiate the end of this, that we have to – that it's automatically once that time comes they have to go and file an unfair labor practice? No, that's not what I'm saying, Your Honor. All I'm saying is that the arbitrator penalized the employer for engaging in these conversations when their employer was required to do that by law. And in effect, she has written these writing requirements out of the agreement written the time limits out of the agreement. The union no longer has to request arbitration within 60 days as long as it's continuing to request information from the employer about the grievance because the employer is required to respond by law and that conduct under the arbitrator's reasoning is what waived the writing requirement for the extension of time. And so in that sense, she has ignored those writing requirements which the employer has written out of the agreement. And by doing so, she's taken them out of the agreement and completely made them unenforceable. Oh, I see. So your argument is not that everything had to stop at 60 days, but that if it was going to go beyond 60 days, then the union had to ask for an extension. Absolutely. And did the – would the employer have been under the same requirement? Did the employer have to require it? If it had gone the other way. Would it have been – if it had gone the other way. Well, the agreement says the union has to request an extension. It's typically the union that's requesting arbitration in these cases because the employer's under – you know, it's the union files the grievance and the employer either denies it. So it's written for – it's the union's responsibility to request an extension. And they could have done so had they – the arbitrator said that these – the lower steps of the grievance procedure needed to be completed before the request was made, but that's nowhere in the contract. But let me ask you one thing. Would a union request for an arbitration within the 60-day period be sufficient or would you have to agree to the request? That would be sufficient. Just the request. Right. And if they say we request arbitration to be extended instead of 60 days to 180 days, that would be? Oh, I see what you're saying. Would the request for an extension be automatic? No. Well, the employer would have to agree to the extension of time, but if the employer didn't agree, they could just make the request for arbitration. I get it. Okay. So if you don't agree, you have to go to arbitration? They don't have to go to arbitration, but they have to make the request, yes. I mean, the time limits are written into the agreement for this reason, to keep things moving, to make sure that these grievances don't languish for years like this one did. You don't have to argue the reason, the purpose, the legislative history if you've got the plain language, right? Right. And in this case, we do. The plain language says there must be a writing to waive a provision of the collective bargaining agreement, yet Arbitrator Bogue found waiver through conduct. That is directly contradictory to Article 26 of the agreement, and for that reason we believe it should be vacated. I have two minutes left. I'll reserve for rebuttal. Thank you. Morning, Your Honors. David Rosenfeld on behalf of the union in this matter. I'm concerned that we're getting suckered into this debate which other circuits have raised about the plain language. I can't find a case in this circuit where this Court has ever reversed an arbitrator's award using the plain doctrine, save and except one case which I lost 30 years ago, the Pacific Motor Trucking case. How about the Supreme Court? Should we pay attention to what they say? Yes. And that's what that's, that's what. How about the U.S. W.A. v. Enterprise Wheel and Car Corp. in 1960? Your Honor, what Enterprise says is that the Court has to look to see whether the decision draws its essence from the contract. And the Court never used the term plain language in Enterprise 51 years ago, nor in the other Steelworker trilogies, and said that's a basis to overturn the award simply because there's a plain language issue. But I think the plain language doesn't apply to the arbitration, to the interpretation of arbitration contracts? I think it doesn't. That language comes, if you go back and look at the history of where that language comes from, Judge Reinhart, Neon Bank decision in Stead Motors, again a case I won, drops a footnote in which he says there may be an egregious case where the arbitrator ignores the plain language and it can be vacated. And he says, see later discussion in the opinion. And when you look later in the discussion in the opinion, Judge Reinhart wrote, that there may be a time when the arbitrator ignores the plain language because he goes off on this industrial justice concept. And that's what Enterprise Wheel and Car said. Enterprise says that if the arbitrator says, I reject the language of the contract, I don't care about it. I'm going to impose my own sense of justice, then it's vacatable. Isn't that what happened here? No. Because what happened was the arbitrator said that there is a 60-day time limit, but in interpreting the contract, it's nonsensical. Counsel said. Why? Well, counsel said that she said that it was harsh, but she failed to say that the arbitrator said both it was harsh and nonsensical. The reason she said it was nonsensical was a very simple proposition. That if you – that, Your Honor, you're correct. The union simply could have on day one said, here's our grievance. We demand arbitration. We don't care what happens. We're demanding it to protect our record. And Bonnie Boak said, well, that doesn't make a lot of sense because you really don't demand arbitration under any grievance procedure until you've exhausted it. And she said there are circumstances where the grievance procedure would have been exhausted within the 60 days, at which point you've got to demand arbitration. But here the employer dragged it out, and it doesn't make a difference whether it's their fault or not. It was over 300 days before that procedure was exhausted. So she said that looking at these provisions, which are inconsistent to some degree, that is, the requirement to file a demand for arbitration within 60 days, and the lengthy procedure that it took to get to that point, she said – Scalia, in every statute of limitations case, you have an opportunity to negotiate. You have an opportunity to settle. But you must file by a certain date. Isn't that what this is? No, because she said that if you look at this, it's really analogous to a tolling doctrine. That is, you don't have to do anything, even in a statute of limitations concept, because you've told that provision. Are you talking about equitable tolling by some representation of the employer that arbitration wouldn't be necessary as long as we keep talking? Well, she found their conduct told it, because they continued to discuss this whole thing for a year, answering the union's request, meeting and discussing it, and never until really towards the very end of the – after the union demanded arbitration. So your interpretation of the contract, as long as the parties are talking, the interpretation, the 60-day provision, is told? That's – that was her theory, but I'm not saying that's true in every case. Well, but that was – as long as they're talking, it's told, and all that stuff about it having to be in writing is paperwork. Well, she dealt with that by interpreting the contract in another respect. And, Your Honor, that's all I'm asking, is that the Court not say – that's what I'm concerned about here – that there's some doctrine about – the Court has to look to the plain language. This whole case doesn't make a lot of sense to me. It – because I'm concerned that a lawyer can just lead the union along and then say, gotcha, you didn't ask for an extension in writing, and so therefore, you're out. And we do want to encourage grievance discussions into a group. I assume you've tried to resolve these at the earliest stage if we can. That should be policy. Do we recognize that someplace? Well, I think Ms. Lee is correct that that's the whole purpose here. And I think that's what Bonnie Boag recognized, that the purpose was to encourage early settlement. And she recognized that the union did pursue it, not always promptly, but did pursue it. But she also recognized, the arbitrator did, that after the 60-day – that the employer waited until basically the 58th day to let the union know. And the important thing is the employer didn't say, wait a minute, union, you've got two more days. And then for another year, they never raised that. So she says that's like a tolling. And what's sort of ironic about this is they cite to the Court another decision by Bonnie Boag in which she ruled that a time limit could be strictly enforced. But what they don't cite is the same decision she held the employers were stopped to assert it under certain circumstances. So there was also some mixed mix here. She said it was regardless of the time time, because the employers could do this temporarily, so that she interpreted the contract. But what helped – helped with what's the law here that helps you? Because the employer is trying to really – I don't, does our law treat these It's – what we bargained for is what the Supreme Court said in Enterprise, the arbitrator's understanding of this, and there is no law. Now, I can cite tolling cases out of California law, and it would be, in my view, clearly told, but I'm not here arguing external law applies here. You're saying that whatever rule we apply to statutory interpretation, which is plain meaning to start with, we shouldn't apply to collective bargaining agreements because you bargained not for the plain language, but for some industrial policy. I don't go quite that far. I bargained for – we bargained for the arbitrator's understanding. And what Of industrial policy rather than the plain language. I don't go quite that far, Your Honor, because I don't want – I don't agree that an arbitrator can say the plain language of the contract says this, but I'm going to disregard it and apply my own sense of industrial justice. We – that we – but you are saying that the law recognizes that, I assume, that the arbitrator has certain – that the arbitrator has certain discretion in interpreting the contract. I go beyond discretion because there's such a broad deference to the arbitrator. We bought his – whatever his or her interpretation is. In the Pacific Motor Trucking case, again, because I still remember this, what Arbitrator Barsanian said was there's a seniority provision, and I agree it governs here, period, but I don't like it and I'm going to apply my own sense of fairness. And Bonnie Boag didn't do that. What she said was, look, there is a 60-day, but it doesn't really work here. She interpreted the language in light of the custom and practice of the parties and of the industry. Am I right? She – I don't want to say the industry. Basically, her understanding of the way unions and employers deal with this. And that's what Enterprise says that arbitrators should bring to this – this. And so, again, I want to go back to this claiming, because that's what I'm – I know Judge Reinhart's decision is wonderful instead, and he uses that phrase, and some courts have used it since then, particularly in the other circuits. This Court in Virginia Mason says really it's a process. You look to see whether the arbitrator is interpreting the agreement, and then it stops, basically. If the arbitrator says, I've interpreted the agreement, but I'm going to ignore the agreement, I'm going to ignore it, that can be a problem. But Bonnie Boag clearly didn't say she ignored it. She said, here's the way it – Kennedy, can the arbitrator say, I interpret black to mean white? Well, that's what we bought. We bought – Oh, you did. You agree that that's what he can say or she can say. That's what you bought. You bought the arbitrator's ability to interpret, but not to go against the language of the contract and make black seem white. If the arbitrator says that phrase means to the court to be black, and she says it means white, and here are the reasons, as long as she – Well, her reason is because it's harsh and nonsensical. Now, there is a reason. The reason is because it's – That's not subjective, is it? No, because she explains why it's nonsensical, because she says it makes no sense under this contract. To her. To – that's right, to her. But she says it makes no sense to her to ask that the union simply as a formality within the 60 days write a letter saying, by the way, we're going to arbitration, when that would be premature and make no sense for the process. If it's process, then you'll do it. Thank you. Thank you. Mr. Lee, if I may, before you begin, ask a question about Section 26. My understanding is that your position is that a waiver must be in writing according to the plain language of Section 26. Am I correct? That's right, Your Honor. I notice that the section is called Amendment and Waiver. And then in the first sentence, it says, This agreement is subject to amendment, alteration, or addition only by the subsequent written agreement between the parties and executed by the employer and the union. It doesn't say waiver. The next sentence deals with waiver in a very different context of it not – a waiver not constituting precedent. So I don't see how the plain language of that section says that a waiver, as opposed to an amendment, must be in writing. I understand, Your Honor, and it's the Sequoia's position that a waiver is an alteration of the agreement. Oh, so you want us to – but doesn't – isn't that contrary to the plain language? The fact of the matter is the contract makes a distinction between amendment and waiver. It says these are two different concepts. Right. But I said waiver is alteration, Your Honor, not amendment. I understand. All right. Waiver. It's there again. It says amendment, alteration, or addition in the first sentence. Yes, Your Honor, and by – It's been generous? And by taking this time limit and the writing requirement, it is undisputed that there's a writing requirement for extensions of the 60-day time limit. She's altered the agreement in a way that's impermissible. The union doesn't dispute that Article 26 requires waivers to be in writing. They admit it as such in their brief. The only argument they made was that it – that she didn't say that the Sequoias had waived a provision of the contract, rather that they had waived an arbitrability defense, which in our – is our position that those are the exact same things. I haven't heard in your argument at all or in your brief any reference to the structure of Article – of Section 23. Of Section 23? Yes. And it says the grievance and arbitration procedure. Doesn't that tell us a tremendous amount about when you have to make this – this request for arbitration? Yes, Your Honor, and Article 23F says the request must be made within 60 days after the grievance was filed, and that any extension of that time limit must be in writing. And again, when Ms. – when Arbitrator Boag found that the time limit was extended through conduct, it directly contradicts Article 23F, as well as Article 26. Of course, Article – but Article – but subsection F must be read, does it, in the context of the structure of the entire section, doesn't it, and the fact that the 60-day calendar requirement for – is in subsection D, after the case reaches that particular level of – of discussion? It doesn't say it has to reach that level of discussion. It says that – Well, that's my point. You – aren't you ignoring the structure of the subsection, the way the subsection is crafted? I don't believe so, Your Honor. There is a requirement of certain steps in the grievance procedure, and there's a requirement that a request for arbitration be made within the 60 days. If the union wanted to wait for these other steps to be completed, all it has to do is request an extension, have the employer agree. Otherwise, it can request arbitration. I have your point. Thank you. Just briefly, Mr. Rosenfeld said that there was no precedent saying that the plain language of the contract applies, but I'd point the Court to Pacific Motor Trucking. No. I think we've been around that. Okay. And your time has expired. Okay. Thank you, Your Honor. Thank you. The case just argued is submitted for decision.
judges: Schroeder, Ripple (7th Cir.), Bea, Cjj